**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 00-6084-CR-ROETTGER**

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ROBERT ULLMAN,

    Defendant,
_____/

## MOTION FOR DOWNWARD DEPARTURE

COMES NOW the Defendant, ROBERT ULLMAN, by and through his undersigned counsel, and respectfully moves this Honorable Court to depart downward at sentencing now set for September 18, 2000, from the current sentencing guidelines on facts and circumstances of a kind, or to an exceptional degree, not adequately taken into consideration by the Sentencing Commission in formulating those guidelines, and would show for cause as follows:

### 1. EXCEPTIONAL ACCEPTANCE OF RESPONSIBILITY

Ullman is entitled to a downward departure due to his willingness to accept responsibility for his offense in extraordinary form. <u>U.S. v. Lieberman</u>, 971 F.2d 989, 996 (3rd Cir. 1992). He has demonstrated exceptional willingness to accept responsibility by his immediate and unqualified actions in not only waiving Indictment and pleading guilty, but in debriefings, post-offense rehabilitation, early closure of his law practice while at the same time protecting his clients' interests. <u>U.S. v. Kirkland</u>, 28



F.3d 49, 51(7th Cir. (Ind.) 1994).

Ullman has not relied on his guilty plea as sole evidence that he has extraordinarily accepted responsibility for his conduct. He has admitted his involvement in the conduct comprising the offense. He has terminated any involvement in criminal conduct and surrendered himself to the wishes and requirements of the Government.

Ullman has voluntarily provided information to the Government in an inquiry regarding corruption. Due to the nature of the Government's investigation, Ullman was considered an "insider." As a criminal defense attorney, Ullman was privy to very type of information the Government requested in order to assess its inquiry.

Ullman voluntarily closed his law practice as soon as he was confronted with his misconduct. U.S. v. Lieberman, supra at 991. More importantly, Ullman's early actions secured sufficient time for his former clients to retain new counsel. Although he could have continued representing clients, and earning fees, Ullman accepted the responsibility for his wrongdoing. He realized that it was in his clients' best interests that they retain new counsel as quickly as practicable, because of the obvious distractions caused by this investigation. To show his sincerity, he returned a substantial portion of fees already earned to his clients. By closing his practice in such a public manner, Ullman exposed himself to attacks and rumors from the leading newspapers in Broward, Dade, and Palm Beach counties. Despite the destructive impact that these articles had on himself, his career, his family, and his friends, Ullman never denied that he was responsible for criminal activity. In fact, he did the opposite. He admitted that he had a problem. He also took the most difficult step by seeking treatment through the Florida Lawyers Assistance (FLA), all prior to any guilty plea in

2

this cause.

Ullman has indicated exceptional acceptance of responsibility by agreeing to forego the practice of law for two years longer than the Florida Bar could have suspended him. This unprecedented measure forcefully indicates his remorse, desire to atone, and willingness to accept the consequences of his mistake. This act alone goes above and beyond normal acceptance of responsibility.

The totality of Ullman's actions are exceptional. Ullman has left no aspect of his life untouched by his desire to forever avoid a similar mistake. He has voluntarily accepted his frailties by participating in substance abuse treatment. He has voluntarily given up his primary source of income for himself and his wife and three children. He has returned fees he would have earned to former clients. He has not attempted to save his reputation by disputing allegations made about him, especially in the press. Ullman has done the ultimate that he could do to show that he truly accepts the responsibility for his criminal actions, and in an exceptional fashion. Therefore, he should be granted a downward departure.

### 2. HIGH PROSPECTS OF REHABILITATION

The Defendant's prospects of rehabilitation are significantly more substantial given his age, education, and the actions which he has undertaken immediately upon his arrest, especially in his post-offense rehabilitation, (see below) which would not even remotely suggest that he would be recidivistic in any fashion.

### 3. POST-OFFENSE REHABILITATION

When a court finds an atypical case where a sentencing guideline may apply linguistically but conduct significantly differs from the norm, the court may consider

3



whether a departure is warranted. U.S. Sentencing Guidelines Manual ch. 1, pt. A, cmt. 4(b) at 6 (1999). The Sentencing Commission usually considers post-offense rehabilitation as part of the downward departure analysis associated with acceptance of responsibility. Therefore, an <u>additional</u> downward departure requires the post-offense rehabilitation to be present in such an exceptional degree that it cannot be considered "typical" and serves to remove this factor "outside the heartland." <u>U.S. v. Bradstreet</u>, No. 99-1267, 2000 WL 298570, at *5, (1st Cir.(Mass.) Mar. 27, 2000). Extraordinary post-offense rehabilitation <u>has</u> been held to support a downward departure. <u>Id.</u>;*see*, <u>U.S. v. Deshon</u>, 183 F.3d 888 (8th Cir.1999); <u>U.S. v. Whitaker</u>, 152 F.3d 1238 (10th Cir. 1998).

Mr. Ullman's post-offense rehabilitation has been nothing short of extraordinary. First, Mr. Ullman has voluntarily entered the Florida Lawyers Assistance (FLA) treatment program. This program is highly-regarded and recommended by the Florida Bar for attorneys who have problems with substance abuse. In <u>U.S. v. Williams</u>, the Eleventh Circuit stated that a truly extraordinary post-arrest, pre-sentence recovery may exceed the degree of recovery contemplated in section 3E1.1 and justify a downward departure. 948 F.2d 706, 710-711, (11th Cir. 1991). Although <u>Ms. Williams'</u> recovery was deemed insufficient to take her case "outside of the heartland" and warrant a downward departure, Mr. Ullman's case is distinguishable. Unlike <u>Williams</u>, Mr. Ullman volunteered to, and did, enter the FLA program. In addition, he has sought, and continues to receive, psychological therapy from a respective addictionologist, Dr. William G. Ryan. Finally, he has voluntarily entered the in-patient treatment program at COPAC, Mississippi and is expected to remain there for a minimum of ninety (90) days.

4

In and of itself, this is extraordinary. However, the Defendant has not stopped there. Secondly, he voluntarily closed his practice because he wanted to concentrate on his recovery, although in the eye of the public he was a respected attorney with a wife and children.

Thirdly, although the Florida Bar's maximum suspension is three (3) years, Mr. Ullman has agreed to refrain from the practice of law for an <u>additional</u> two (2) years, bringing his total "suspension" to <u>five</u> years. Mr. Ullman believes the additional time is necessary in order for him to concentrate on his rehabilitative efforts. This additional step evidences Mr. Ullman's extraordinary commitment to rehabiliation. Despite this, Mr. Ullman <u>continues</u> to provide support for his family. He uniquely ended his practice early on, found new counsel for his clients and refunded substantial fees so that his clients' rights would not be compromised. Therefore, Mr. Ullman's efforts at rehabilitation have gone well beyond the typical case considered by the Eleventh Circuit in <u>Williams</u> and the Sentencing Commission. As such, the rationale of <u>US v. Sally</u>, 116 F.3d 76 (3rd Cir. 1997) most appropriately fits the Defendant's status and together with the enhanced suspension noted below, authorizes a reduction.

### 4. **MINIMAL ROLE IN THE OFFENSE**

Ullman is entitled to a <u>four</u>-level downward departure based on his minimal role in the offense and pursuant to USSG §3B1.2(a). The application notes provide two examples of circumstances where a reduction based on minimal participation is warranted. USSG §3B1.2, comment. (n. 2). In each example, the offender actually participated in a drug smuggling operation but to a lesser degree that most other participants. The examples show that this reduction is intended to apply to offenders

5

who are among the least culpable of those involved in the conduct of a group. USSG §3B1.2, comment. (n. 1).

Ullman is even less culpable than the offenders in the scenarios used for the application notes and substantially less culpable than the other participant in this offense. He was never involved in transporting contraband at any time. He never came into physical contact with the contraband for the purposes of transportation or delivery. He was, and it is conceded by the Government, is, a simple user. The only way Ullman could have been less culpable is if he had not participated in the unlawful conduct <u>at</u> <u>all</u>. This departure is designed for those who <u>do</u> participate, but to a lesser degree. Therefore, Ullman should be granted at <u>least</u> a <u>three</u> level, if not a four-level downward departure because of his minimal participation in the wrongful conduct.

### 5. "OUTSIDE THE HEARTLAND"

The Guidelines allow the court to depart downward when there is evidence of a mitigating factor "not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." USSG §5K2.0, p.s.; <u>Koon v. U.S.</u>, 518 U.S. 81, 94 (1996). Atypical cases were not taken into consideration by the Commission and the factors which make a case atypical are potential bases for departure. <u>Koon</u>, 518 U.S. at 94. The combined effect of these atypical factors places this case "outside the heartland" of cases considered by the Sentencing Commission, and entitles Ullman to a downward departure.

#### A. Unusual Susceptibility to Danger in Prison

A sentencing court may consider susceptibility to abuse in prison as a factor for a

6

downward departure in extraordinary or unusual circumstances. U.S. v. Ruff, 998 F. Supp. 1351, 1358 (M.D. (Ala.) 1998). The danger of abuse is heightened in this case because of Ullman's chosen profession. As a criminal defense attorney, Ullman faces the likely prospect of encountering individuals in prison with whom he is familiar. In the course of doing their job, criminal defense attorneys are often asked to defend violent elements of our society. Despite their best efforts, an attorney is not always successful in gaining an acquittal for the client. It is foreseeable, that a client faced with the prospect of substantial time in jail, may seek revenge against the system. The former client may associate the attorney, who failed to secure an acquittal, with the system that incarcerated him. Moreover, Ullman was a State prosecutor for a time, employed by the Broward State Attorney's office. In that capacity, he was directly responsible for prosecutions which often resulted in jail time for the offenders.

A criminal defense attorney, a police officer, and certainly a former prosecutor, bear similar risks associated with their jobs. Consideration of a person's status as a police officer has led to a departure based upon unusual susceptibility to abuse in prison. Koon, 518 U.S. 81, 112 (1996); U.S. v. Shasky. 939 F. Supp. 695, 697 (D. Neb. 1996)(defendant's status as a state trooper combined diminutive stature and nature of offense made him unusually susceptibility to abuse in prison.). A former prosecutor is just as likely, if not more likely, to be victimized in prison because of his status, as is a police officer.

Ullman has been a defense attorney for over eighteen years. The facts of his demise have been chronicled in the leading newspapers of at least two counties. Due to the nature of his chosen profession, his relativity slight stature, and the publicity

7

surrounding this case, he will be a target, and unusually susceptible to danger, in prison. Therefore, a downward departure should be granted.

### B. Responsibility to Dependents

Family ties and responsibilities are not <u>ordinarily</u> relevant in determining whether a sentencing departure is warranted. USSG §5H1.6, p.s. However, this language does not preclude a sentencing judge from considering such factors when they are present to such an extent as to constitute an extraordinary situation. <u>U.S. v. Lara</u>, 905 F.2d 599, 603 (2nd Cir. 1990); <u>U.S. v. Gauvin</u>, 173 F.3d 798, 807 (10th Cir. 1999). The United States Sentencing Guidelines do not require a judge to "leave compassion and common sense at the door to the courtroom."  <u>U.S. v. Johnson</u>, 964 F.2d 124, 125 (2nd Cir. 1992).

Courts have considered the defendant's responsibility to provide financial and emotional support for his family as a reason for discretionary downward departure. <u>U.S. v. Mena</u>, 968 F. Supp. 115, 118 (E.D.N.Y. 1997). Downward departures have been granted in situations where the family was uniquely dependant on the defendant's ability to maintain existing financial commitments. <u>U.S. v. Sprei</u>, 145 F.3d 528, 535 (2nd Cir. 1998). In fact, extraordinary family circumstances are widely accepted as a valid reason for departure. <u>Johnson</u>, 964 F.2d at 129. An approval of such a departure is not for the benefit of the defendant, but on behalf of those who <u>depend</u> on the defendant. <u>Id.</u>

The Ullman family is acutely dependant on this Defendant's financial contribution and his continued involvement with his children. The facts of this case exceed those present in <u>U.S. v. Cacho</u>, 951 F.2d 308 (11th Cir. 1992), where the Eleventh Circuit

8

Court of Appeal upheld the district court's refusal to depart for family circumstances. In Cacho, the court reasoned that the defendant had shown nothing extraordinary about his family circumstances that would justify a departure. Id. at 311. In contrast, the Ullman family does have extraordinary and unique circumstances which should provide a basis for a downward departure.

Ullman is the father of three children: Jessica, age 14; Erika, age 12; and Joey, age 8. Now that Ullman has temporarily relinquished the practice of law, and has separated from his wife of fifteen years, the children are all he has left. Despite his hectic schedule, he has always been extremely active in their lives. Ullman has coached baseball, basketball, and soccer teams on which his children played. He often takes them to school or picks them up. They regularly attend movies and professional games. Even now, with uncertainty about the future, and a rehabilitative program to maintain, Ullman sees his children almost every day.

Ullman's oldest daughter, Jessica, is a special needs child. From the time Jessica was very young, her parents were forced to place her on Ritalin. Ullman has done, and continues to do, everything in his power to improve Jessica's condition. He has located a private school for Jessica to attend which will improve her academic performance as well as her ability to cope with life's pressures. He has provided professional counseling for Jessica. Ullman pays for the professional counseling and the private education alone. Ullman's former wife, Robin, is a social worker. Although Ullman's income will be greatly diminished, any income from him will reduce the burden on Robin, and increase the likelihood of Jessica continuing to receive the special attention she needs.

9

The Ullman children are having to adjust to a <u>second</u> drastic upheaval in their lives - the divorce of their parents as a result of this criminal involvement and its attendant disruption. Often, children require <u>years</u> of assurance, and sometimes counseling, to cope with this type of fundamental change. The prospect of not seeing their father, whom they see almost daily, for an extended period of time will definitely have a negative impact on these innocents. The ability to depart downward based on mitigating factors or atypical scenarios was designed to permit a lesser degree of punishment for those who are not the "typical offenders." In this case, the court decides the fate of a person who became addicted to narcotics and committed a crime. At the same time, the court decides the fate of a person who adores his children, plays a emotionally and financially vital role in their lives, protects his client's interests, does <u>pro-bono</u> work for his community, and is intensely fighting his addiction. A crime was committed, but that does not change the fact that Ullman is a good father. He deserves a downward departure based on his continuing responsibility to his dependents, and the children's dependence on the contributions only their father can make in their lives.

### C. Exceptional Community Involvement

A court may consider a defendant's community involvement when there are significant contributions of time, personal skill, and involvement in determining the appropriate degree of departure if the court concludes the case presents extraordinary circumstances. <u>U.S. v. Tocco</u>, 200 F.3d 401, 434 (6th Cir. 2000). Furthermore, "substantial civic involvement" and "numerous acts of charity" have been found to warrant a downward departure from the Sentencing Guidelines. <u>U.S. v. Turner</u>, 915 F.2d 1574, 1990 WL 15047, *4 (6th Cir.(Mich) 1990); <u>U.S. v. Somerstein</u>, 20 F. Supp.

10

2d 454, 463 (E.D.N.Y. 1998).

In Turner, the court found the community activities of a man who had been involved with community organizations for most of his adult life sufficiently unusual to warrant departure. Id. Ullman has devoted substantial amounts of time to his community. He has coached basketball, soccer, and baseball for over nine years receiving several plaques and awards for his contributions.

Ullman has also demonstrated exceptional community involvement using his legal expertise for pro bono work in, and around, Broward county. Ullman handled at least three cases per year, for ten years, on a pro bono basis. He accepted and tried a case involving a person who had been accused of first-degree murder. In that case, the State was seeking the death penalty. Ullman's efforts led to the defendant being sentenced to life in prison. He could have expected to earn approximately $30,000 in legal fees, even as a Special Public Defender, if he had not taken the case pro bono. Ullman has been involved with such activities since he began practicing law, and still continues to volunteer his time.

The benefit that a community receives from pro bono work cannot be overstated. Often, those needing Ullman's assistance are desperate, or have already experienced a violation of their rights. Without pro bono efforts by attorneys like Ullman, these citizens would continue to be victims because they lack the money to fight for their rights. Furthermore, pro bono work benefits the legal system by improving the perceptions of attorneys and judges within the community. Everyone makes errors in judgment as Ullman has done here. However, not everyone gives an extraordinary amount of their free time to assist their community as Ullman has done year after year.

11

The Defendant's efforts are made more extraordinary by the fact that attorneys may <u>buy</u> out of their pro bono obligations. He has declined to take that easy path. Early in his career, Ullman recognized that the law should benefit all persons equally. He has done more than his share to ensure the ideal translates into reality for his community. For these reasons, Ullman should be granted a downward departure on the basis of his extraordinary community involvement.

### D. **Loss of license to practice law**

As a result of this offense, Ullman has, at least, agreed to a suspension from, if he does not actually lose the privilege to practice law. A sentencing court may consider any factor that is not forbidden by the Sentencing Commission in determining whether to depart from the sentencing guidelines. The loss of a professional license is not forbidden, encouraged, or discouraged by the Commission. This type of mitigating factor has not been addressed. <u>U.S. v. Steele</u>, 178 F.3d 1230, 1239 (11th Cir. 1999). A sentencing court does not abuse its discretion by departing downward on the basis of an unaddressed factor if that factor takes the case out of the guideline's heartland. <u>U.S. v. Rivera</u>, 994 F.2d 942, 949 (1st Cir. 1994).

In this case, Ullman's loss of license to practice law will have a devastating effect on him, and an even more damaging effect on his family. The effect is sufficient to move this case out of the guideline's heartland. A person who completes four years of college, three years of law school, passes the state bar exam, and begins to practice law on a daily basis, changes. Their occupation defines them, to a certain extent, in the eyes of society as well as their own mind. They think of themselves as a "lawyer", or an "attorney", or a "litigator", or an "advocate". They are no longer who they were.

LAW OFFICES OF BOGENSCHUTZ & DUTKO, P.A.
COLONIAL BANK BUILDING • 600 SOUTH ANDREWS AVENUE, SUITE 500 • FORT LAUDERDALE, FLORIDA 33301 • (954) 764-2500 • FAX (954) 764-5040

The company they keep is increasingly filled with other lawyers and persons with law degrees. Their conversations inevitably turn to aspects of the law. This case is outside of the heartland because Ullman actually loses part of who he is for over twenty (20) years. The practice of law consumes the practitioner in a substantially different manner than the average offender committing a similar offense. The typical offender does not invest as much of his or her life into their occupation as does even a shoddy lawyer, much less a highly-accomplished attorney. Moreover, even with a suspension there is no guarantee that the Defendant will ever be permitted to practice again - especially a five (5) year suspension, as it will require "proof of rehabilitation" sufficient to convince the Board of Governors, to permit reinstatement.

The ability to practice law provides benefits to the family which go beyond financial stability. The family, in particular the children, feel a higher degree of respect. They are exposed to events, travel, issues, and individuals the average child never enjoys. These benefits play a positive role in developing the child's self-respect, self-worth, sense of security, autonomy, goals, values, and general behavior. Jessica, mentioned above, certainly has a better chance of improving her academic achievement and behavior than the average child because her father can provide more opportunities for her. This case is atypical because even the Ullman children will have to painfully adjust to their new lives, where the average offender's family only makes a financial adjustment.

In U.S. v. Hoffer, 129 F.3d 1196 (11th Cir. 1997), and U.S. v. Steele, 178 F.3d 1230 (11th Cir. 1999), the Eleventh Circuit rejected downward departures on the basis of a loss of license. However, those cases had facts which are not present in Ullman's

13

case. Moreover, the distinguishing facts were determinative in the decision.

Hoffer was a physician and Steele was a pharmacist who <u>used</u> <u>their</u> <u>privileges</u> to perpetrate their crimes. <u>Hoffer</u>, 129 F.3d at 1198; <u>Steele</u>, 173 F.3d at 1232. The government filed, and was granted, a sentencing <u>enhancement</u> under U.S.S.G. § 3B1.3 for using their special skills or abusing a position of trust in facilitating their crimes. <u>Hoffer</u>, 129 F.3d at 1204; <u>Steele</u>, 173 F.3d at 1239. Most importantly, the Eleventh Circuit reasoned that to allow a downward departure for loss of license would negate the enhancement under § 3B1.3 in reaching its decisions. <u>Hoffer</u>, 129 F.3d at 1205; <u>Steele</u>, 173 F.3d at 1239. A close reading of the opinions reveals that the court had no other reason for denying the loss of license departure.

In the case <u>sub</u> <u>judice</u>, Ullman did not use his privilege as an attorney to further his criminal endeavor. Unlike Hoffer and Steele, Ullman is a "simple user", not an orchestrator of the infraction. Moreover, the government will not seek sentencing enhancements against Ullman. The prohibitions against downward departure in <u>Hoffer</u> and <u>Steele</u> do not apply in this case, yet the mitigating factor does. The circumstances and consequences associated with Ullman's loss of license to practice law remove this case from the heartland of cases warranting a downward departure.

### 6.    **REMORSE**

Remorse, although normally taken into some consideration in USSG 3E1.1 "Acceptance of Responsibility", is a permissible factor for departure if it is present to some "exceptional degree". <u>US v. Fagan</u>, 162 F.3d 1280, 1283 (10th Cir. 1998) - <u>emphasis</u> <u>added</u>. This Defendant's remorse is extreme. His addiction and its, and his resultant involvement in the series of events that bring him before this court have

14

shattered his family, embarrassed his profession, will result in the suspension, or loss, of that profession, financially devastated him, made him a convicted felon, and held him up to scorn in his community. The loss of the trust and confidence of his children is especially traumatic, as one of their icons is shattered. The only good thing that has come from this tragedy is that the Defendant, in losing everything else in his life, may have, indeed at long last, rediscovered himself, and a positive approach, drug and instability free, to the rest of his life. That will also not come without the obligatory price of hard work and renewed dedication to recovery. However, in his actions, admissions and acceptance herein, and his voluntary admission to COPAC, that journey has begun. From him to whom much is given, much is expected - and when a fall occurs, that fall is harder, from higher, than most. The extraordinary remorse and self accusation which he experiences every waking day of his life cannot be overstated. If there is an "exceptional degree" of remorse and extraordinary actions taken to make up for his defalcations, it is reflected in this Defendant.

### 7.    **COMBINATION OF ALL FACTORS**

Ullman qualifies for a reduction in sentence based upon a combination of the above factors even where no one particular factor would authorize a reduction on its own, especially from paragraphs 5 and 6 herein. U.S. v. Rioux, 97 F.3d 648, 663 (2nd Cir. 1996). In 1994, a paragraph was added to the commentary of USSG 5K2.0 allowing for a downward departure based on "a combination of factors." USSG §5K2.0, comment. Additionally, the Supreme Court in Koon v. U.S., 518 U.S. 81 (1996) has reinforced the court's power to grant such a reduction in particular cases. Even prior to the amendment, several circuits had authorized such departures. See U.S. v. One

15

Star, 9 F.3d 60,61 (8th Cir. 1993); U.S. v. Hines, 26 F.3d 1469 (9th Cir. 1994); U.S. v. Cook, 938 F.2d 149, 153 (9th Cir. 1991); U.S. v. Bowser, 941 F.2d 1019, 1025 (10th Cir. 1991); U.S. v. Sklar, 920 F.2d 107, 117 (1st Cir. 1990). Since the amendment, at least three circuits have approved a "combination of factors" downward departure. See U.S. v. Rioux, 97 F.3d 648 (2nd Cir. 1996); U.S. v. Iannone, 184 F.3d 214 (3rd Cir. July 12, 1999, No. 98-3373). U.S. v. Jones, 158 F.3d 492 (10th Cir. 1998). See also U.S. v. Rybicki, 96 F.3d 754 (4th Cir.) Cert granted, judgment vacated 518 US 1014 (1996).

Ullman should receive an ultimate reduction based upon the combination and joinder of factors which although they may not, in and of themselves, constitute such a ground for departure, in concert make a compelling case for such a reduction. It is evident that these specific, atypical facts are of a kind or to a degree not adequately taken into consideration by the Commission, and a probation sentence is urged to be warranted. Considering all factors asserted in this motion, to wit:

    (1) Exceptional Acceptance of Responsibility;

    (2) High Prospects of Rehabilitation;

    (3) Post-Offense Rehabilitation;

    (4) Minimal Role in the Offense;

    (5) Factors For "Outside the Heartland" Status:

        A. Unusual Susceptibility to Danger in Prison;

        B. Responsibility to Dependents;

        C. Exceptional Community Involvement;

        D. Loss of license to practice law;

    (6) Remorse

LAW OFFICES OF BOGENSCHUTZ & DUTKO, P.A
COLONIAL BANK BUILDING • 600 SOUTH ANDREWS AVENUE, SUITE 500 • FORT LAUDERDALE, FLORIDA 33301 • (954) 764-2500 • FAX (954) 764-5040



(7) The Combination of Factors;

this Court would be justified in sentencing this Defendant to a term of probation. U.S. v. Somerstein, 20 F. Supp. 2d 454, 464 (E.D.N.Y. 1998). It is expected that the Government will not oppose such a sentence and may agree to several of the downward departure grounds herein.

WHEREFORE, in consideration of the plethora of reasons outlined above, the Defendant respectfully moves this court for a sentence of probation, as a downward departure, with any other special conditions that are appropriate in the discretion of the Court, including the continuation of therapy and treatment and community service hours.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the forgoing was furnished to Theresa Van Vliet, Assistant United States Attorney, 500 East Broward Boulevard, 7th Floor, Fort Lauderdale, FL 33394 and to Kathryn Gomez, U.S. Probation, 299 East Broward Boulevard, Room 409, Fort Lauderdale, FL 33301-1168 on this 26th day of July, 2000.

Respectfully submitted,

BOGENSCHUTZ & DUTKO, P.A.
Colonial Bank Building, Suite 500
600 South Andrews Avenue
Fort Lauderdale, FL 33301
Telephone: (954) 764-2500

BY: _____
J. DAVID BOGENSCHUTZ
FL BAR #131174

17